**FILED**

NOV 22 2019

Judge Sharon Johnson Coleman
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 19 CR 279 |
| v. | Hon. Sharon J. Coleman |
| SEOK PHENG LIM | |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant SEOK PHENG LIM, and her attorney, SERGIO RODRIGUEZ, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.     The information in this case charges defendant with conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h).

3.     Defendant has read the charge against her contained in the information, and that charge has been fully explained to her by her attorney.

4.     Defendant fully understands the nature and elements of the crime with which she has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information, which charges defendant with conspiracy to commit money

laundering, in violation of Title 18, United States Code, Section 1956(h). In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6. Defendant will plead guilty because she is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

Beginning no later than in or about January 2016, and continuing until at least in or about September 2017, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant SEOK PHENG LIM knowingly conspired with Haiping Pan, Sui Yuet Kong, Xianbing Gan, Huanxin Long, Antonio Cuellar Esparza, and other persons known and unknown, to commit offenses in violation of Title 18, United States Code, Section 1956, namely: (a) to knowingly conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, namely felony violations of Title 21, United States Code, Sections 841, 846, 952, 959, 960, and 963 involving buying, selling, importation, and otherwise dealing in a controlled substance, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of

some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and (b) to transport, transmit, and transfer a monetary instrument and funds involving the proceeds of specified unlawful activity, namely, felony violations of Title 21, United States Code, Sections 841, 846, 952, 959, 960, and 963 involving buying, selling, importation, and otherwise dealing in a controlled substance, from a place in the United States to or through a place outside the United States, knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i); all in violation of Title 18, United States Code, Section 1956(h).

Specifically, beginning in or about January 2016, LIM agreed to join an international money laundering organization led by Haiping Pan (the "Pan Network"). As defendant then knew, the Pan Network: (1) contracted with Mexico-based drug trafficking organizations (DTOs) to receive bulk quantities of cash narcotics proceeds in major U.S. cities, including Chicago and New York, through money "pickups," in which DTO couriers met with Pan Network couriers and transferred narcotics proceeds to the Pan Network couriers; (2) delivered the narcotics proceeds to money laundering specialists responsible for laundering the

funds, which included depositing the funds into bank accounts by concealing the funds as the proceeds of legitimate business activity; (3) wired, or caused the wiring, of the narcotics proceeds to bank accounts controlled by or associated with the Pan Network, including individual and commercial bank accounts in China; and (4) caused the laundered narcotics proceeds to be remitted to Mexico, where Pan Network operatives delivered the laundered funds to DTO clients.

LIM's role in the Pan Network included facilitating money pickups in New York and Chicago, at which DTO couriers delivered narcotics proceeds to Pan Network couriers, including Sui Yuet Kong. As part of this, LIM, at Pan's direction, regularly obtained from money laundering couriers a code name, telephone number, and unique serial number to be used in connection with a money pickup, and passed that information to Pan, who in turn passed it to his DTO clients for purposes of arranging a meeting between the DTO and Pan Network courier in or around Chicago and New York, at which narcotics proceeds were exchanged. After the Pan Network courier received the narcotics proceeds, LIM and/or the courier counted the funds and then LIM sent Pan confirmation that the funds were received. LIM then coordinated the laundering of the funds with Pan, Xianbing Gan, and/or the Pan Network courier, including by receiving from Pan and/or Gan bank account information to be used to wire the narcotics proceeds to Chinese bank accounts controlled by the Pan Network (as a means of concealing the illegal source of the funds), and passing that information to the Pan Network courier to effect the wire transfers.

4

During her involvement in the conspiracy, the Pan Network received an average of three to four money laundering contracts per week, of which an average of one to two were completed. The amounts involved in the completed and attempted pickups typically ranged from between $150,000 to $1,000,000. On average, LIM knowingly participated in laundering at least approximately $3,000,000 in narcotics proceeds per month through the Pan Network. LIM typically personally earned a 0.5% commission for each money laundering transaction that she facilitated for the Pan Network. LIM did not participate in money laundering activity in June, July, and August 2017, and participated in only one money laundering transaction in September 2017, involving the pickup and laundering of approximately $480,000 in New York City.

On several occasions during the course of the conspiracy, law enforcement seized cash narcotics proceeds that LIM had arranged to be received by the Pan Network to be laundered, including approximately: (i) $492,956 in United States currency seized in Chicago on or about January 31, 2017; (ii) $117,000 in United States currency seized in Chicago on or about April 25, 2017; and (iii) $504,583 in United States currency seized in New York on or about May 23, 2017. At different points during the conspiracy, LIM discussed with others, including Pan and Gan, the fact that the proceeds they were laundering were derived from the sale of illegal narcotics in the United States.

In total, in the manner described above, LIM knowingly participated in

5

laundering and attempting to launder approximately $48,000,000 in narcotics proceeds.

7.     The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and criminal forfeiture, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

## Maximum Statutory Penalties

8.     Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $500,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.     Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which she has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

9.     Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other

sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2018 Guidelines Manual.

b. **Offense Level Calculations**.

i. The base offense level is 30, pursuant to Guideline § 2S1.1(a)(2), which provides for a base offense level of 8, plus the number of offense levels from the table in §2B1.1 corresponding to the value of the laundered funds.

7

Because the value of laundered funds was greater than $25,000,000 but less than $65,000,000, pursuant to §2B1.1(b)(1)(L), the number of offense levels corresponding to the value of the laundered funds is 22.

      ii.      Because § 2S1.1(a)(2) applies, and because defendant knew or believed that the laundered funds were the proceeds of, or were intended to promote an offense involving the manufacture, importation, or distribution of a controlled substance, pursuant to Guideline § 2S1.1(b)(1)(A) & (B)(i), the offense level is increased by 6 levels.

      iii.      Because Guideline § 2S1.1(a)(2) applies, and because defendant was in the business of laundering funds, pursuant to § 2S1.1(b)(2)(C), the offense level is increased by 4 levels.

      iv.      Because defendant was a manager or supervisor and the criminal activity involved five or more participants or was otherwise extensive, pursuant to Guideline § 3B1.1(b), the offense level is increased by 3 levels.

      v.      Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to her ability

to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vi.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.     **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 40, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range, pursuant to Guideline § 5G1.1(a), of 292-365 months' imprisonment, in addition to any supervised release and fine the Court may impose.

e.     Defendant and her attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding

predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

   f.  Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

**Cooperation**

   11.  Defendant agrees she will fully and truthfully cooperate in any matter in which she is called upon to cooperate by a representative of the United States

10

Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of her sentencing until after the conclusion of her cooperation.

### Agreements Relating to Sentencing

12.    At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart downward from the low end of the applicable guideline range, and shall recommend a sentence that includes a term of imprisonment in the custody of the Bureau of Prisons of 50 percent of the low end of the applicable guideline range. Defendant shall be free to recommend any sentence. Defendant understands that the decision to depart from the applicable guideline range rests solely with the Court.

13.    If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to § 5K1.1.

Defendant may not withdraw her plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

14. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

15. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

## Forfeiture

17. Defendant understands that by pleading guilty, she will subject to forfeiture to the United States all right, title, and interest that she has in any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense.

18. Defendant agrees to forfeiture of the following specific property to the United States: (1) the approximately $492,956 seized in Chicago on or about January

31, 2017; (2) the approximately $117,890 seized in Chicago on or about April 25, 2017; and (3) the approximately $504,583 seized in New York City on or about May 23, 2017. In doing so, defendant admits that the property described above represents property involved in the offense, as alleged in the information. Defendant consents to the immediate entry of a preliminary order of forfeiture as to this specific property, thereby extinguishing any right, title, or interest defendant has in it. If any of the specific property is not yet in the custody of the United States, defendant agrees to seizure of that property so that it may be disposed of according to law.

19.     In addition, defendant agrees to the entry of a personal money judgment in the amount of $150,000 (representing the amount of money LIM personally earned through her participation in the money laundering conspiracy). Defendant consents to the immediate entry of a preliminary order of forfeiture setting forth the amount of the personal money judgment she will be ordered to pay.

20.     Defendant admits that because the directly forfeitable property, other than the specific property noted above, is no longer available for forfeiture as described in Title 21, United States Code, Section 853(p)(1), the United States is entitled to seek forfeiture of any other property of defendant, up to the value of the personal money judgment, as substitute assets pursuant to Title 21, United States Code, Section 853(p)(2).

21. Defendant understands that forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

22. Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel. Defendant further agrees not to challenge or seek review of the civil or administrative forfeiture of any property identified in this agreement subject to forfeiture, and will not assist any third party with regard to such challenge or review.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

23. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 19 CR 279.

24. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other

person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

25. Defendant understands that by pleading guilty she surrenders certain rights, including the following:

a. **Right to be charged by indictment**. Defendant understands that she has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives her right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that she has been prosecuted by way of information.

b. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against her, and if she does, she would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear

voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

viii.     With respect to forfeiture, defendant understands that if the case were tried before a jury, she would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

c.     **Waiver of appellate and collateral rights**. Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal her conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal her conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of forfeiture, in exchange for the concessions made by the United States in this Agreement. In

addition, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant also waives her right to challenge her conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

26.  Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

27.  Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

28.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of her sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

29.    For the purpose of monitoring defendant's compliance with her obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

30.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

31.     Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to an offense that is an "aggravated felony" as that term is defined in Title 8, United States Code, Section 1101(a)(43), removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including her attorney or the Court, can predict to a certainty the effect of her conviction on her immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her guilty plea may entail, even if the consequence is her automatic removal from the United States.

## Conclusion

32.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

33.     Defendant understands that her compliance with each part of this Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

34.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

35.     Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

36.     Defendant acknowledges that she has read this Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 11/22/19

_____
JOHN R. LAUSCH, JR.
United States Attorney

_____
SEOK PHENG LIM
Defendant

_____
SEAN FRANZBLAU
Assistant U.S. Attorney

_____
SERGIO RODRIGUEZ
Attorney for Defendant