1          IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION

3
   UNITED STATES OF AMERICA,        )
4                                   )
                    Plaintiff,      )
5                                   )
   -vs-                             )
6                                   ) Case No. 19 CR 279-1
   SEOK PHENG LIM, also known as    )
7  Michelle, also known as Zoo,     ) Chicago, Illinois
                                    ) November 22, 2019
8                   Defendant.      ) 11:40 a.m.

9
           TRANSCRIPT OF PROCEEDINGS - Change of Plea
10       BEFORE THE HONORABLE SHARON JOHNSON COLEMAN

11  APPEARANCES:

12  For the Plaintiff:    UNITED STATES ATTORNEY'S OFFICE
                          BY:  MR. SEAN JOSEPH BYRNES FRANZBLAU
13                        219 S. Dearborn Street
                          Chicago, IL  60604
14
    For the Defendant:    FEDERAL DEFENDER PROGRAM
15                        BY:  MR. SERGIO FIDEL RODRIGUEZ
                          55 E. Monroe Street
16                        Suite 2800
                          Chicago, IL  60603
17

18

19

20

21

22
    Court Reporter:       KELLY M. FITZGERALD, CSR, RMR, CRR
23                        Official Court Reporter
                          United States District Court
24                        219 South Dearborn Street, Room 1420
                          Chicago, Illinois  60604
25                        Telephone:  (312) 818-6626
                          kmftranscripts@gmail.com

1    (Proceedings heard in open court:)

2        THE CLERK:  19 CR 279, U.S.A. v. Seok Pheng Lim.

3        MR. FRANZBLAU:  Good morning, Your Honor.  Sean

4    Franzblau for the United States.

5        THE COURT:  You all may have a seat.

6        MR. RODRIGUEZ:  Good morning, Your Honor.  Sergio

7    Rodriguez from the Federal Defender Program on behalf of Seok

8    Pheng Lim who is present in court, and we are prepared to

9    change our plea.

10        THE COURT:  How are you, ma'am?

11        THE DEFENDANT:  Good.  Thank you.

12        THE COURT:  Good.  You're welcome.  I need you to

13    raise your right hand.

14    (Defendant sworn.)

15        THE COURT:  Ma'am, I need you to keep your voice up.

16    I know you may be a little bit nervous, but you need to relax

17    and keep your voice up so the court reporter can hear you and

18    I can hear you --

19        THE DEFENDANT:  Okay.

20        THE COURT:  -- and I can know during this process

21    that you are not hesitating because your voice isn't at a

22    point where I can hear you.  Okay?

23        THE DEFENDANT:  Okay.

24        THE COURT:  Because what's going to be really

25    important -- the government is ready for the change of plea

1   also; is that correct?

2       MR. FRANZBLAU:  Yes, Your Honor.

3       THE COURT:  So what's really important is first and

4   foremost you're able to understand everything that I say

5   during this process today, and not only that, but that you're

6   able to understand.  Okay.  I'm going to give you a lot of

7   information.  I'm certain that at least one time, if not

8   multiple times knowing Mr. Rodriguez, it's been gone over with

9   you today, but I need to hear on the record and hear you

10  clearly say when I ask you if you understand certain things

11  that I tell you that you understand.  Okay?

12      THE DEFENDANT:  Okay.

13      THE COURT:  The Court needs to make sure that you,

14  again, have had time to talk to your counsel about a change of

15  plea.  Your current plea is not guilty.  So the question about

16  whether or not you are going to go through with the plea will

17  not be answered until we're done with this question and answer

18  situation and when I ask you at the close of these proceedings

19  how do you plead, then that is when, if you still wish to

20  change your plea, you will change your plea.  Do you

21  understand?

22      THE DEFENDANT:  Yes.

23      THE COURT:  Before that you're going to have

24  information about the charge that you're thinking about

25  changing your plea to.  You're going to know what -- that

1    there is a factual basis, meaning that if it went to trial,

2    what the basic information would be, basic facts that would

3    prove the government's case on that charge.  You are going to

4    know what the maximum possible penalties are in the case, the

5    most you could get based on whatever charge you plead guilty

6    to.  All right.  You will know your trial rights because right

7    now you have a not guilty plea on file, and you will know what

8    your trial rights are if you decide to change your mind and go

9    right -- and go to trial.  You understand that?

10                THE DEFENDANT:  Yes.

11                THE COURT:  This Court needs to know that everything

12    you do today is voluntary, on your own free will, and no one

13    has forced you or threatened you or coerced you in any way to

14    change your plea.  Do you understand?

15                THE DEFENDANT:  Yes.

16                THE COURT:  The Court also wants you to know that you

17    are going to be asked some questions and the answers may

18    implicate wrongdoing on your part.  Do you understand that?

19                THE DEFENDANT:  Yes.

20                THE COURT:  And you are expected to give truthful

21    answers to the questions the Court gives you.  Do you

22    understand that?

23                THE DEFENDANT:  Yes.

24                THE COURT:  And if you do not give truthful answers,

25    you risk being prosecuted further for perjury.  Do you

1    understand?

2                THE DEFENDANT:  Yes.

3                THE COURT:  The Court wants you to know again not

4    only can you change your mind at any time prior to changing

5    your plea today, but if you have a question about anything

6    that I say, even that your counsel says or the government

7    says, you need to stop and say, Judge, I have a question.  You

8    can step to the side with your lawyer and talk about it.  Do

9    you understand that?

10               THE DEFENDANT:  Yes.

11               THE COURT:  If you even look like you have a question

12   or I hear your voice go down and get really, really quiet, I'm

13   going to say, you know what?  I'm going to ask you to step to

14   the side to talk to your lawyer to make sure you want to go

15   further.  Do you understand that?

16               THE DEFENDANT:  Yes.

17               THE COURT:  All right.  So with all that pre

18   information, let's get to the basic information, which is your

19   name.

20               THE DEFENDANT:  Seok Pheng Lim.

21               THE COURT:  All right.  Could you spell that for the

22   court reporter.

23               THE DEFENDANT:  S-e-o-k, P-h-e-n-g, L-i-m.

24               THE COURT:  All right.  And, Ms. Lim, how old are

25   you?

1      THE DEFENDANT:  41.

2      THE COURT:  I'm sorry?

3      THE DEFENDANT:  41.

4      THE COURT:  All right.  And you live in what city and

5   state?

6      THE DEFENDANT:  Pennsylvania.  Hazle Township.

7      THE COURT:  And are you married?

8      THE DEFENDANT:  Divorced.

9      THE COURT:  And how far did you get in your

10   education?

11      THE DEFENDANT:  College.

12      THE COURT:  All right.  Is that college in this

13   country, the United States?

14      THE DEFENDANT:  No.

15      THE COURT:  All right.  And was your primary language

16   in your education up to college something other than English?

17      THE DEFENDANT:  English and Mandarin.

18      THE COURT:  English and Mandarin.  Are you fluent in

19   both?

20      THE DEFENDANT:  Yes.

21      THE COURT:  All right.  You're able to read and write

22   both; is that correct?

23      THE DEFENDANT:  Yes.

24      THE COURT:  You do not need an interpreter for this

25   purpose today; is that correct?

1            THE DEFENDANT:  Yes.

2            THE COURT:  Have you been under a doctor's care for

3    any condition?

4            THE DEFENDANT:  Yes, psychiatrist.

5            THE COURT:  All right.  And with the psychiatrist,

6    are you doing counseling and medication --

7            THE DEFENDANT:  Only medication.

8            THE COURT:  -- or one or the other?

9            I'm sorry?

10           THE DEFENDANT:  Only medication.

11           THE COURT:  All right.  And what medication is that?

12           THE DEFENDANT:  I don't have it with me, Your Honor.

13           THE COURT:  Okay.  Well, what is the medication for?

14           THE DEFENDANT:  For depression.

15           THE COURT:  All right.  And when's the last time you

16   saw a psychiatrist about that prescription?

17           THE DEFENDANT:  Last month.

18           THE COURT:  Okay.  And how often do you take the

19   medication?

20           THE DEFENDANT:  Every day.

21           THE COURT:  Once a day or twice a day?

22           THE DEFENDANT:  Twice a day.

23           THE COURT:  Twice a day?

24           THE DEFENDANT:  Yeah.

25           THE COURT:  So morning and evening?

1    THE DEFENDANT:  Yes.

2    THE COURT:  All right.  So last night, did you take

3  the medication?

4    THE DEFENDANT:  Yes.

5    THE COURT:  Did you take it this morning?

6    THE DEFENDANT:  No.

7    THE COURT:  All right.  When do you usually take it

8  during the morning?

9    THE DEFENDANT:  About 11:30.

10    THE COURT:  All right.  And are there any side

11  effects when you take it that would cause you to be unable to

12  participate today?

13    THE DEFENDANT:  No.

14    THE COURT:  All right.  What about when you come

15  close to the end of the period of time before you take it, do

16  you suffer from some type of side effects, meaning so if you

17  take it at 11:00, 11:30, it's 10:40, do you start having any

18  type of reactions as you wait to take your medication?

19    THE DEFENDANT:  No.

20    THE COURT:  Okay.  Outside of that medication there's

21  no other condition that you are being medicated for; is that

22  correct?

23    THE DEFENDANT:  Yes.

24    THE COURT:  All right. And generally you're in good

25  physical health?

1    THE DEFENDANT:  Yes.

2    THE COURT:  Have you ever spent time in a hospital

3 for any mental episode or mental condition?

4    THE DEFENDANT:  No.

5    THE COURT:  What type of work have you done in the

6 last several years?

7    THE DEFENDANT:  In the CS.

8    THE COURT:  I'm sorry?

9    THE DEFENDANT:  CS.

10   THE COURT:  I'm sorry.  I'm not getting that.  What

11 do you do?  Give me a description of what you do.

12   THE DEFENDANT:  I sell merchandise.

13   THE COURT:  Ah, okay.  So you're in retail?

14   THE DEFENDANT:  Retail.

15   THE COURT:  All right.  And have you been in that

16 field for at least three years, doing that type of work?

17   THE DEFENDANT:  Ten years.

18   THE COURT:  Ten years, okay.  And you said you did

19 some college; is that correct?

20   THE DEFENDANT:  Yes.

21   THE COURT:  All right.  And have you gone further

22 than college?  Did you get your degree?

23   THE DEFENDANT:  No.

24   THE COURT:  Mr. Rodriguez, do you have any doubt as

25 to your client's competency to offer a plea in this case?

1            THE DEFENDANT: I do not, Your Honor.

2            THE COURT: All right.

3            And, government, do you have any doubt as to the

4 defendant's competency to change her plea in this case?

5            MR. FRANZBLAU: No, Your Honor.

6            THE COURT: Based on the conversation with you today,

7 Ms. Lim, and your client and the government lawyer's assurance

8 in their mind that you are competent, the Court is going to

9 find you competent to go further in this process and to

10 continue to consider changing your plea and competent to

11 change your plea after the Court goes through your various

12 rights. That will be the Court's finding.

13            All right. Tell me your lawyer's name. I cheated

14 and told you a couple of times.

15            THE DEFENDANT: Sergio.

16            THE COURT: Sergio?

17            THE DEFENDANT: Yeah.

18            THE COURT: You know his last name or not?

19            THE DEFENDANT: I can't remember his last name.

20            THE COURT: Okay. Rodriguez? The man standing to

21 your left?

22            MR. RODRIGUEZ: The handsome man.

23            THE COURT: All right. And you've had enough time to

24 talk with him, either by phone or in person?

25            THE DEFENDANT: By phone.

1   THE COURT:  All right.  And you've had enough time to

2   talk to him?

3       THE DEFENDANT:  Yes.

4       THE COURT:  All right.  You were able to tell him

5   everything you know about the case, correct?

6       THE DEFENDANT:  Yes.

7       THE COURT:  And you were able to ask questions?

8       THE DEFENDANT:  Yes.

9       THE COURT:  All right.  And are you satisfied with

10  the advice that he has given you, his efforts on your behalf,

11  even though they were over the phone?

12      THE DEFENDANT:  Yes.

13      THE COURT:  You understand what I'm -- are you sure?

14  Are you okay with him?  Has he done a good job for you up to

15  now?

16      THE DEFENDANT:  Yes.

17      THE COURT:  Are you sure?  You're giving me like an

18  eye and looking around.  Do you feel like you had enough time

19  to really meet with him?

20      THE DEFENDANT:  No.

21      THE COURT:  You don't feel that way.

22      All right.  I'm going to have you step to the side

23  for a little while.  And if we need to take some time and come

24  back another day, we will.  Step to the side.

25      MR. RODRIGUEZ:  Very well.  Thank you.

1       (Counsel and defendant conferring.)

2              THE COURT:  All right.  Mr. Rodriguez?

3              MR. RODRIGUEZ:  Your Honor, after speaking with

4       Ms. Lim, she feels that she's -- we've had enough time both

5       over the phone and we met in person this morning.  We, in

6       fact, made one slight change to the plea agreement.  So she is

7       prepared to keep going today.

8              THE COURT:  Is that correct, ma'am?

9              THE DEFENDANT:  Yes, ma'am.

10             THE COURT:  All right.  Do you understand that this

11      Court would even give you -- if government's counsel is

12      available, the Court would give you time to come back after

13      1:30 if you needed the time, additional time to meet with your

14      lawyer?  Do you wish to have that additional time --

15             THE DEFENDANT:  No.

16             THE COURT:  -- or do you wish to go ahead today?

17             THE DEFENDANT:  Go ahead today.

18             THE COURT:  All right.  You feel you've been able to

19      meet with him enough as your lawyer and you have confidence in

20      the efforts on your behalf that he has made; is that correct?

21             THE DEFENDANT:  Yes.

22             THE COURT:  All right.

23             MR. FRANZBLAU:  And, Judge, just for the record, I've

24      had numerous conversations with defense counsel going back and

25      forth where he's exhibited a great deal of knowledge and

1  familiarity with the terms of the plea agreement.  He had told

2  me that he's had discussions with his client.  He's then come

3  back to me and asked to make changes.  He's gone back and had

4  discussions.

5      So it's not my place to comment on the

6  attorney-client relationship, but to the extent that it helps

7  your analysis, I've had several in-depth conversations with

8  defense counsel where he demonstrated not only detailed

9  knowledge of the plea agreement but also repeatedly expressing

10  his client's concerns about the plea agreement.

11      THE COURT:  Well, I thank you for that additional

12  information, but as you know, it's not really about -- the

13  Court would expect nothing less from Mr. Rodriguez.  It's not

14  really about your comfort level or what you think her comfort

15  level might be with him.  It's about her comfort level.  And

16  if she expresses some doubt as to that this, Court has to go

17  into it further.

18      MR. FRANZBLAU:  Absolutely.

19      THE COURT:  All right.  But if everybody is

20  comfortable, but most importantly, ma'am, if you're

21  comfortable proceeding, we will continue to proceed, but I

22  will ask again if you need to stop or should we continue.  Do

23  you understand?

24      THE DEFENDANT:  Yes.

25      THE COURT:  All right.  So you told me that you told

1  him everything that is involved in your actions in this case,

2  the charge.

3          This was an information, not an indictment, correct?

4          MR. FRANZBLAU:  Correct.

5          THE COURT:  And did we already do the waiver of the

6  indictment?

7          MR. FRANZBLAU:  Yes, Your Honor.

8          THE COURT:  We did that when she came in?

9          MR. FRANZBLAU:  Yes, Judge.

10          THE COURT:  And so the question is, is it only one

11  charge or is there more than one?

12          MR. FRANZBLAU:  One count.

13          THE COURT:  And that was a count of conspiracy to

14  commit money laundering; is that correct?

15          MR. FRANZBLAU:  Correct, Judge.

16          THE COURT:  All right.  Is that your understanding of

17  the charge, ma'am?

18          THE DEFENDANT:  Yes.

19          THE COURT:  So that would be the charge you'll be

20  pleading guilty to or looking to change your plea at the close

21  of these proceedings.  Do you understand?

22          THE DEFENDANT:  Yes.

23          THE COURT:  All right.  So Mr. Rodriguez, without

24  referring to any of the facts specifically in this case, what

25  did you discuss with your client about her charges?

1          MR. RODRIGUEZ:  Your Honor, I discussed with my

2     client that via the information she was charged with

3     conspiring with several people to launder some money from a

4     drug organization in Mexico both here in Chicago and in

5     New York and Asia.

6          THE COURT:  All right.  Is that correct, ma'am?

7          THE DEFENDANT:  Yes.

8          THE COURT:  All right.  And he also discussed with

9     you what were the possible consequences if you plead guilty?

10          THE DEFENDANT:  Yes.

11          THE COURT:  He also told you you had a right to

12     continue in your not guilty plea and go to trial; is that

13     correct?

14          THE DEFENDANT:  Yes.

15          THE COURT:  And so you understand that you do have a

16     right to a trial until you change your plea and if you change

17     your plea to guilty.  Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Do you also understand that right now as

20     you stand before me you have all the rights under our

21     constitution, the laws of the United States, to persist in a

22     not guilty plea and demand a trial?  Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  All right.  In this country, we often

25     have -- anybody who is accused of a crime has a right, a

1  general right to have a jury trial.  In my opinion, they also

2  have a right in the state court, they have a right to decide

3  they don't want a jury.  They could waive a jury.  But here in

4  federal court, they cannot do that.  They can't just say,

5  Judge, we just want you to hear the trial.  The government has

6  to agree or that won't take place.  Do you understand?

7                 THE DEFENDANT:  Yes.

8                 THE COURT:  So the only thing we're going to talk

9  about is a jury trial.  Do you understand that?

10                 THE DEFENDANT:  Yes.

11                 THE COURT:  All right.  You have a right to have a

12  jury which is 12 people, at least, and they are picked after

13  being questioned by this Court, by me, in the presence of you

14  and your lawyer and in the presence of the government, and you

15  get to weigh in with questions for me to ask them.  Do you

16  understand that?

17                 THE DEFENDANT:  Yes.

18                 THE COURT:  People come from all over the Northern

19  District of Illinois.  So it's like 14 counties.  They are

20  chosen at random, and they come in to determine by questioning

21  whether or not they can participate in your case.  Do you

22  understand?

23                 THE DEFENDANT:  Yes.

24                 THE COURT:  All right.  And you will have some input

25  through your lawyer just as the government will.  Do you

1   understand?

2           THE DEFENDANT:  Yes.

3           THE COURT:  There are different types of ways that we

4   choose jurors.  One is there's the questions and we get the

5   answers.  You also have a copy of the questionnaire that this

6   Court has.  It's about a three- or four-page questionnaire

7   which we give every potential juror to fill out so that you

8   and the government can have a full picture of what the people

9   who might sit on your jury are like.  Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  In addition to having that

12  paper that they write on, then you get to hear and see them

13  answer additional questions.  Okay?  Is that a yes?

14          THE DEFENDANT:  Yes.

15          THE COURT:  All right.  The questioning will go on.

16  You will be present.  And then if there's someone who has a

17  conflict based on a schedule conflict, maybe they work for an

18  organization that's involved in this case, maybe they have

19  knowledge of the people who are actually participating,

20  whether it's the agents or it's you and any other possible

21  co-conspirators, anybody like that, then those people would be

22  disqualified from being on the jury.  Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  All right.  And then there are other

25  reasons that somebody could say they need to be dismissed for

1   what's called cause, meaning maybe they're taking a trip in

2   the middle of the trial.  Maybe they said something they

3   shouldn't have in the hallway that would indicate that they

4   are biased to one person or the other.  Do you understand

5   that?

6           THE DEFENDANT:  Yes.

7           THE COURT:  All right.  Then in addition to asking

8   that those people, potential jurors, not participate in the

9   case, you also have an opportunity to ask for ten people that

10  have been questioned, up to ten, these people shouldn't be on

11  my jury.  I don't think they could give me a fair trial.  And

12  you will talk to your lawyer about that.  Do you understand?

13          THE DEFENDANT:  Yes.

14          THE COURT:  All right.  The government also deserves

15  a fair trial, and with that they get six what we call strikes,

16  meaning they're discretionary.  They're at your discretion

17  with your lawyer to ask for them to be not a part of the case.

18  The government has a right to ask up to six people not to be a

19  part of the case.  Do you understand that?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Eventually the jury will be selected and

22  the trial will start.  When the trial starts, the government

23  at all times has the burden of proving your guilt beyond a

24  reasonable doubt.  Do you understand?

25          THE DEFENDANT:  Yes.

1            THE COURT:  You don't have to prove anything at that

2       point.  You don't have to prove that they -- that you have

3       done anything -- not done anything wrong.  It's up to the

4       government to prove you did something that was against the

5       law.  Do you understand?

6            THE DEFENDANT:  Yes.

7            THE COURT:  You have a right to have Mr. Rodriguez

8       cross-examine, challenging the evidence as the government puts

9       forth.  He could do that.  Subpoena power will be available to

10      him to use if you need to subpoena some documents or some

11      testimony if you go to trial.  Do you understand that?

12           THE DEFENDANT:  Yes.

13           THE COURT:  You also have the right to testify on

14      your own behalf in your own defense if you wish to.  You also

15      have the right not to testify.  If you choose not to testify,

16      the jury cannot presume, oh, she didn't testify, she must be

17      guilty.  They will be told that constantly.  Since you don't

18      have to prove anything, you don't have to say anything unless

19      you want to.  Do you understand that?

20           THE DEFENDANT:  Yes.

21           THE COURT:  Any questions about that right?

22           THE DEFENDANT:  No.

23           THE COURT:  After the jury trial is put on, the

24      evidence is presented, the Court will give instructions to

25      potential jurors on the law in this case and what will be

1  applying in this case depending on what the facts are shown to

2  be.  And if the jury finds that the government did not meet

3  its burden beyond a reasonable doubt on the charge of

4  conspiracy that is available here, then the case is over and

5  you'll be allowed to go free.  Do you understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  If the jury finds that the government did

8  meet its burden of finding you guilty beyond a reasonable

9  doubt, then the guilty verdict would be entered and then some

10  time later a sentencing would happen.  Usually it's 60 to 90

11  days.  Do you understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  During that time -- you get to appeal the

14  Court's decision if you go that route, but during that time

15  that we're waiting for setting a sentencing date, the

16  probation would give you interviews.  You would give as much

17  information about your life and your family, your previous

18  life when you did not live in this country, would be given the

19  information, and the probation department will put together a

20  packet called presentence investigation report.  And in that

21  report, they would have everything that they could learn about

22  you that would be included in your sentencing packet to allow

23  this Court to see you not only as a defendant in front of me

24  but how you are as a person total so that I can reach the

25  decision, which is very hard, of determining what kind of

1  sentence for you is sufficient but not greater than necessary.

2  Do you understand?

3        THE DEFENDANT:  Yes.

4        THE COURT:  And so I get all kinds of input.  If you

5  have letters that are written on your behalf, there's someone

6  who might testify on your behalf what kind of person you are

7  that would help me pick what your sentence should be, that

8  would be when you bring it.  The government would have the

9  opportunity to present if they wish in person to present a

10  victim of one of these schemes that is alleged here, and they

11  would get a chance to talk about how your actions and those of

12  the people around you may have affected their lives.  Do you

13  understand that?

14        THE DEFENDANT:  Yes.

15        THE COURT:  But that would be at a different time.

16  All right?

17        THE DEFENDANT:  Okay.

18        THE COURT:  All right.  And you would have a

19  chance -- if this matter went to trial, you would have a

20  chance after sentencing to appeal the decision, ask for

21  another court here to take a look at what happened in my

22  courtroom and determine whether or not your conviction and

23  sentence should be appealed, but that comes at a later date.

24  Do you understand?

25        THE DEFENDANT:  Yes.

1    THE COURT:  Is there a written plea agreement?

2    MR. FRANZBLAU:  There is, Your Honor.

3    THE COURT:  I have a draft here.  I think it's about

4  22 pages.  Am I correct?

5    MR. FRANZBLAU:  That's correct.  Since I delivered

6  the draft yesterday, there's just been one change, page 5

7  that's handwritten in, and we all initialled it.

8    THE COURT:  All right.  Where is that?  Where on

9  page 5?

10    MR. FRANZBLAU:  So I have it right here for you, and

11  I'll tender it to the Court.

12    THE COURT:  Just say it on the record first.

13    MR. FRANZBLAU:  I'm sorry.  It's the sentence in the

14  first paragraph that begins "on average," Your Honor.  I think

15  it's about the third sentence.

16    THE COURT:  All right.

17    MR. FRANZBLAU:  And so we've changed it -- it now

18  reads, "On average, Lim knowingly participated in laundering."

19  We struck "at least."  It now reads, " ... participated in

20  laundering approximately between 1 million to 3 million in

21  narcotics proceeds per month through the Pan Network."

22    THE COURT:  All right.  And is that the language you

23  understood to be there?

24    MR. RODRIGUEZ:  That's correct.

25    THE COURT:  Mr. Rodriguez and you agree that those

1  changes were made; is that correct, Ms. Lim?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And that your signature which now appears

4  on page 22 of the document, your signature was after you knew

5  about those changes; is that correct?

6          THE DEFENDANT:  Yes.

7          THE COURT:  So do you see on the last page, do you

8  see your name listed on page 22, the blank and your name -- or

9  a line and your name?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  And did you -- is your

12  signature there?

13          THE DEFENDANT:  Yes.

14          THE COURT:  All right.  And did you sign it after

15  reviewing these items with your lawyer?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Did anyone force you or threaten you or

18  promise you anything to sign this document?

19          THE DEFENDANT:  No.

20          THE COURT:  And the document's been signed by the

21  government and as well as by Mr. Rodriguez; is that correct?

22          MR. RODRIGUEZ:  That's correct, Your Honor.

23          MR. FRANZBLAU:  Yes, Your Honor.

24          THE COURT:  All right.  So you can hand that up.

25          Ma'am, the Court wants to ask, are you a citizen of

1  our country?

2  THE DEFENDANT:  No.

3  THE COURT:  All right.

4  So is that matter addressed here in the plea

5  agreement?

6  MR. RODRIGUEZ:  It is in the plea agreement.

7  THE COURT:  What paragraph?

8  MR. FRANZBLAU:  Your Honor, it's paragraph 31, page

9  20.

10  THE COURT:  So, ma'am, being very specific, because

11  you are not a citizen, your pleading guilty today may have

12  consequences.  Do you understand that?

13  THE DEFENDANT:  Yes.

14  THE COURT:  When I say "consequences," I'm saying as

15  to your immigration status.  Do you understand that?

16  THE DEFENDANT:  Yes.

17  THE COURT:  Government, why don't you state the

18  maximum possible penalties.

19  MR. FRANZBLAU:  Judge, the count carries a maximum

20  term of imprisonment of 20 years, a maximum fine of $500,000

21  or twice the gross gain or gross loss resulting from the

22  offense, whichever is greater, and a term of supervised

23  release of up to three years as well as a $100 special

24  assessment.

25  THE COURT:  Is that your understanding?

1          MR. RODRIGUEZ:  That's correct, Your Honor.

2          THE COURT:  All right.  Do you understand, ma'am,

3    that that's the most you can receive in this case?  That's the

4    highest number?  Do you understand?

5          THE DEFENDANT:  Yes.

6          THE COURT:  All right.  Government, why don't you

7    give me the expected guideline range.

8          MR. FRANZBLAU:  Judge, the parties calculate the

9    defendant to be an anticipated offense level of 40, a criminal

10   history category of I, leading to an advisory range,

11   anticipated advisory range of 292 to 365 months' imprisonment.

12         THE COURT:  Do you understand that that is a -- how

13   much of that range is mandatory?

14         MR. FRANZBLAU:  None.

15         THE COURT:  There's no mandatory minimum.

16         MR. FRANZBLAU:  No mandatory minimum.

17         THE COURT:  All right.  So, ma'am, what he just read,

18   which is quite a bit of time that is available for this Court

19   to sentence you within, nothing is mandatory which means this

20   Court is going to look at the evidence and the arguments

21   presented by both sides, your background.  It's important that

22   you work well with the person who's presenting your pretrial

23   report.  Do you understand that?

24         THE DEFENDANT:  Yes.

25         THE COURT:  All right.  And that those are advisory

1    guidelines, and this Court has the room to start at that point

2    as most judges will with someone in similar circumstances.

3    And then I could revise it up.  I could revise it down.  I

4    could stay in the same range.  Do you understand that?

5              THE DEFENDANT:  Yes.

6              MR. FRANZBLAU:  And, Judge, sorry.  I should have

7    mentioned because there's a stat max of 20 years, there's an

8    effective advisory guideline range of 240 months here.

9              THE COURT:  Do you understand?  Do you understand

10   what he just said about effective guideline?

11             Mr. Rodriguez, step to the side and talk to your

12   client real quick.

13             MR. RODRIGUEZ:  Your Honor, I have --

14             THE COURT:  Just do it real quick again.  All right.

15      (Counsel and defendant conferring.)

16             THE COURT:  All right.  Do you understand about the

17   advisory guidelines?  If so, you're better than most people,

18   but do you understand about the advisory guidelines?

19             THE DEFENDANT:  Yes.

20             THE COURT:  All right.  And what is the possibility

21   as far as your range of sentencing.  Do you understand that?

22             THE DEFENDANT:  Yes.

23             THE COURT:  All right.  Government, go ahead and give

24   the Court a factual basis.

25             MR. FRANZBLAU:  Thank you, Judge.

1    If this case were to go to trial, the government

2  would prove the following beyond a reasonable doubt:

3    Beginning no later than in or about January of 2016

4  and continuing until at least in or about September of 2017,

5  at Chicago and elsewhere, the defendant knowingly conspired

6  with Haiping Pan, Sui Yuet Kong, Xianbing Gan, Huanxin Long,

7  Antonio Cueller Esparza and other persons known and unknown,

8  to commit offenses in violation of Title 18, United States

9  Code, Section 1956, namely to knowingly conduct a financial

10  transaction affecting interstate and foreign commerce, which

11  transaction involved the proceeds of specified unlawful

12  activity, namely felony violations of Title 21 narcotics

13  offenses knowing that the transaction was designed in whole

14  and in part to conceal and disguise the nature, location,

15  source, ownership and control of the proceeds of specified

16  unlawful activity and that while conducting and attempting to

17  conduct such financial transaction knew that the property

18  involved in the financial transaction represented the proceeds

19  of some form of unlawful activity; further to transport,

20  transit and transfer a monetary instrument and funds involving

21  the proceeds of specified unlawful activity, again, namely

22  felony violations of Title 21, narcotics offense, from a place

23  in the United States to a place to or through a place outside

24  the United States, knowing that the monetary instrument and

25  funds involved in the offense represented the proceeds of some

1  form of unlawful activity and knowing that such

2  transportation, transmission and transfer was designed in

3  whole and in part to conceal and disguise the nature of the

4  location, the source, the ownership and the control of the

5  proceeds in violation of Title 18, United States Code, Section

6  1956(a)(2)(B)(i), all in violation of 18 U.S.C. § 1956(h).

7          Specifically, beginning in or about January of 2016,

8  the defendant agreed to join an international money laundering

9  organization led by Haiping Pan, which I will refer to as the

10  Pan Network.  As defendant knew, the Pan Network contracted

11  with Mexico-based drug trafficking organizations, or DTOs, to

12  receive bulk quantities of cash narcotics proceeds in major

13  U.S. cities, including Chicago and New York, through money

14  pickups in which DTO couriers met with Pan Network couriers

15  and transferred narcotics proceeds to the Pan Network

16  couriers; secondly, delivered the narcotics proceeds to money

17  laundering specialists responsible for laundering the funds

18  which included depositing the funds into bank accounts by

19  concealing the funds as the proceeds of legitimate business

20  activity; third, wiring or causing to be wired the narcotics

21  proceeds to bank accounts controlled by or associated with the

22  Pan Network, including individual and commercial bank accounts

23  in China; and, fourth, caused the laundered narcotics proceeds

24  to be remitted to Mexico where Pan Network operatives

25  delivered the laundered funds to DTO clients.

1       Lim's specific role in the Pan Network included

2   facilitating money pickups in New York and Chicago at which

3   DTO couriers delivered narcotics proceeds to Pan Network

4   couriers including Sui Yuet Kong.  As part of this, Lim, at

5   Pan's direction, regularly obtained from money laundering

6   couriers a code name, telephone number and unique serial

7   number to be used in connection with the money pickup and

8   passed that information to Pan, who in turn passed it to his

9   DTO clients for purposes of arranging a meeting between the

10  DTO and Pan Network courier in or around Chicago or New York

11  at which narcotics proceeds were exchanged.  After the Pan

12  Network courier received the narcotics proceeds, Lim and/or

13  the courier counted the funds and then Lim sent Pan

14  confirmation that the funds were received.  Lim then

15  coordinated the laundering of the funds with Pan, Xianbing Gan

16  and/or the Pan Network courier, including by receiving from

17  Pan and/or Gan bank account information to be used to wire the

18  narcotics proceeds to Chinese bank accounts controlled by the

19  Pan Network as a means of concealing the illegal source of the

20  funds and passing that information to the Pan Network courier

21  to effect the wire transfers.

22      During her involvement in the conspiracy, the Pan

23  Network received an average of three to four money laundering

24  contracts per week of which an average of one to two were

25  completed.  The amounts involved in the completed and

1    attempted pickups typically range from between $150,000 to

2    $1,000,000.  On average the defendant knowingly participated

3    in laundering between approximately $1,000,000 to $3,000,000

4    in narcotics proceeds per month through the Pan Network.  The

5    defendant typically personally earned a .5 percent commission

6    for each money laundering transaction that she facilitated for

7    the Pan Network.  The defendant did not participate in money

8    laundering activity in June, July, and August 2017 and

9    participated in only one money laundering transaction in

10    September 2017 involving the pickup and laundering of

11    approximately $480,000 in New York City.

12        On several occasions during the course of the

13    conspiracy, law enforcement seized cash narcotics proceeds

14    that Lim had arranged to be received by the Pan Network to be

15    laundered, including approximately $492,956 in United States

16    currency seized in Chicago on or about January 31st of 2017;

17    $117,000 in United States currency seized in Chicago on or

18    about April 25th of 2017; and $504,583 in United States

19    currency seized in New York on or about May 23rd of 2017.  At

20    different points during the conspiracy, the defendant

21    discussed with others, including Pan and Gan, the fact that

22    the proceeds they were laundering were derived from the sale

23    of illegal narcotics in the United States.

24        In total, in the manner described above, the

25    defendant knowingly participated in laundering and attempting

1  to launder approximately -- the government will say

2  approximately 48 million.  The defendant agrees it was over 25

3  million in narcotics proceeds.

4        THE COURT:  All right.  Is that correct for the most

5  part?

6        THE DEFENDANT:  Yes.

7        THE COURT:  All right.  So the statements -- you

8  heard all the statements that were made, correct?

9        THE DEFENDANT:  Yes.

10        THE COURT:  All right.  The only discrepancy you may

11  have is with the amount; is that correct?

12        THE DEFENDANT:  Yes.

13        THE COURT:  So at the very least, 25 million, and at

14  the most, 48 million; is that correct?

15        THE DEFENDANT:  Yes.

16        THE COURT:  And, again, just making sure, what is her

17  status?  Is there any recommendation that if she goes through

18  with this plea today that it would affect her non-detention

19  situation?

20        MR. FRANZBLAU:  No, Your Honor.  The government would

21  ask, because of some extraordinary circumstances, including

22  cooperation with the government, that she remain on bond.

23  She's been very, very compliant.

24        THE COURT:  All right.

25        Mr. Rodriguez?

1          MR. RODRIGUEZ:  We agree.  She is going to be a

2   witness in a trial that just keeps getting moved, but no.

3   She's doing everything she's supposed to.

4          THE COURT:  Okay.

5          MR. RODRIGUEZ:  And she wants to provide as much

6   cooperation as she can.  She knows that's going to affect her

7   sentence.

8          THE COURT:  All right.

9          Is that correct, ma'am?

10         THE DEFENDANT:  Yes.

11         THE COURT:  So I have determined that you are

12  competent to change your plea today even though you're on

13  medication, but it appears to be working in favor of that

14  competency.

15         I have also determined that you know what the charge

16  is against you.  You've had a chance to speak with counsel

17  about your various options, and you are satisfied with his

18  representation of you, as is the Court.

19         The Court also notes that you now have not only the

20  charge but the factual basis to support a change in plea

21  should you wish to do so.  And everything you've done today is

22  voluntary.

23         Based on that, your knowing about what the

24  possibilities are in sentencing, you have no changes to make

25  to the factual basis that was set forth by the government; is

1    that correct?

2         THE DEFENDANT:  Yes.

3         THE COURT:  So knowing all of that, how do you plead

4    to this information's sole charge?

5         MR. FRANZBLAU:  Judge, I'm sorry.

6         THE COURT:  I'm sorry.

7         MR. FRANZBLAU:  Before you take the plea, and I'm

8    sorry to interrupt you.

9         THE COURT:  Uh-huh.

10        MR. FRANZBLAU:  Could I just point out a few other

11   provisions just out of an abundance of caution?

12        THE COURT:  Sure.  Sure.  Again, in fact, tell the

13   Court where we are on the issue of her citizenship.

14        MR. FRANZBLAU:  So my understanding is she is not a

15   United States citizen.

16        THE COURT:  So?

17        MR. FRANZBLAU:  So she will face likely deportation.

18        THE COURT:  All right.

19        You understand that, ma'am?

20        THE DEFENDANT:  Yes.

21        THE COURT:  All right.

22        MR. FRANZBLAU:  Thank you, Judge for that.

23        And then at page 12, beginning at paragraph 17,

24   there's a forfeiture provision.  At paragraph 19, the

25   defendant is agreeing to the entry of a personal money

1 judgment in the amount of $150,000 which represents the amount

2 of money she earned through her involvement in the conspiracy.

3        THE COURT:  Mm-hmm.

4        Is that correct, ma'am?

5        THE DEFENDANT:  Yes.

6        THE COURT:  All right.

7        MR. FRANZBLAU:  There's also a waiver of appellate

8 and collateral rights at page 17, subparagraph (c).  So I just

9 wanted to point that out as well.

10        THE COURT:  All right.  Do you see where counsel is

11 talking about in the draft, in the plea agreement that's been

12 signed?  So you have certain rights, ma'am.  After this Court

13 enters judgment, you have a right to appeal.  You have a right

14 to challenge -- you know, after this Court issues a sentence,

15 you have a right to challenge the Court's decision unless

16 there's something in the plea agreement that has been

17 presented that waives that right.  Do you understand?

18        THE DEFENDANT:  Yes.

19        THE COURT:  All right.  And in this particular case,

20 there is a general waiver?  There appears to be?

21        MR. FRANZBLAU:  That's right.

22        THE COURT:  All right.  Of the appellate issues you

23 may have had if you would have exercised your right to trial.

24 And any other terms that are included in here, they're called

25 Section 5K1.1, and the government can ask for a range

1   depending on how much they believe you have assisted them.

2   And then your lawyer can argue on the other side if there's an

3   issue where the government says oh, we only think she

4   cooperated 20 percent level as opposed to they could go --

5   your lawyer could speak higher for you.  It would be up to

6   this Court to make a decision on how useful the Court felt

7   that you were to meet the requirements of my sentence at the

8   close of these proceedings which will be sufficient but not

9   greater than necessary.  I get the final word on -- no matter

10  what the government said, I get the final word on how much

11  your cooperation meant if you did indeed cooperate at all.  Do

12  you understand?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And what else did you have?

15          MR. FRANZBLAU:  So that's exactly right, Judge.  The

16  cooperation provision at paragraph 12, the government has

17  agreed to -- presuming the defendant's cooperation continues,

18  to recommend a sentence of no more than 50 percent off the low

19  end of the applicable guideline range.  And in exchange, she

20  is not only giving a general waiver but a waiver of all

21  appellate and collateral rights, including the right to

22  challenge the sentence imposed.

23          THE COURT:  All right.  And once again, do you

24  understand and agree that you understand and have taken this

25  into consideration about your cooperation, about how much time

1 off you may get depending on where that takes the government's

2 cases and about waiving your appellate rights in this case to

3 a large extent?  Do you understand that?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Do you need time to talk to your lawyer

6 about it?  You don't have to.  Only if you need to.

7            Step over to the side.  She has a question.

8            MR. RODRIGUEZ:  A couple of minutes.

9     (Counsel and defendant conferring.)

10            THE COURT:  All right.  Anything to add,

11 Mr. Rodriguez?

12            MR. RODRIGUEZ:  We're fine, Your Honor.

13            THE COURT:  Are you fine?

14            THE DEFENDANT:  Yes.

15            MR. FRANZBLAU:  Thank you, Judge.

16            THE COURT:  All right.

17            And anything else before I --

18            MR. FRANZBLAU:  That's all from the government.

19 Thank you.

20            THE COURT:  All right.

21            Anything else, Mr. Rodriguez?

22            MR. RODRIGUEZ:  No, Your Honor.

23            THE COURT:  All right.  So at this time, ma'am,

24 having made certain findings, having made sure you have

25 certain information, including the additional information that

1  the government brought to the Court's attention, the Court

2  asks you, how do you plead to the sole count of the

3  information, the charge that's in front of you?  How do you

4  plead right now?  Right now it's a not guilty plea.  This is

5  your opportunity to change your plea.  Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And what, if anything, do you change your

8  plea to?

9          THE DEFENDANT:  Guilty.

10          THE COURT:  Guilty.  All right.  You previously had a

11  not guilty plea on file, and you have now, with all the

12  information you have, including the written plea agreement and

13  the other conditions or information presented to you, you're

14  changing your plea to not -- to guilty; is that correct?

15          THE DEFENDANT:  Yes.

16          THE COURT:  All right.  Then the Court will enter a

17  judgment on that plea of guilty, and we will set -- again, I'm

18  thinking 90 days?

19          MR. RODRIGUEZ:  Just a status, I think, Your Honor.

20          MR. FRANZBLAU:  Judge, if we could set a status

21  because there's a trial in February --

22          THE COURT:  Okay.

23          MR. FRANZBLAU:  -- at which the defendant is planning

24  to testify.

25          THE COURT:  All right.

1          Do you understand, ma'am?

2          THE DEFENDANT:  Yes.

3          THE COURT:  All right.  So I'm going to set a date

4    for a status, and then we'll set a date for sentencing after

5    that.  And during the time, I'm assuming that you will be

6    allowed, the government isn't challenging your ability to go

7    back to your living arrangements before you came here today.

8    But the Court expects you to keep faith with the conditions

9    that I have already put on you for you to stay out of jail at

10   this point.  Are you able to do that?

11         THE DEFENDANT:  Yes.

12         THE COURT:  All right.  Then that's the case.

13         Then let's set a date, Yvette, in February, late

14   February, unless there's a date you think she might be here so

15   she doesn't have to double --

16         MR. FRANZBLAU:  Yeah, good point.

17         MR. RODRIGUEZ:  It's up to you.

18         MR. FRANZBLAU:  So the trial is the last week of

19   February.

20         THE COURT:  Okay.

21         MR. FRANZBLAU:  So we could probably just come in

22   that week, one of those mornings.

23         THE COURT:  Want to do the 27th?

24         MR. RODRIGUEZ:  That's fine.

25         THE COURT:  That's a Monday.

1          MR. FRANZBLAU:  Yes.

2          THE COURT:  All right.  February 27th at 9:00 for a

3     status.

4          THE CLERK:  That's a Thursday, Judge.

5          THE COURT:  I'm sorry.  I'm looking at the wrong day.

6          THE CLERK:  Wrong month.

7          THE COURT:  I'm in January.  What is it in February?

8          MR. RODRIGUEZ:  Your Honor, in case the trial --

9     something happens with the trial, I mean, we would still like

10    to come to the status.  But if she's not going to be here in

11    Chicago, we would like her presence waived unless she needs to

12    be here in Chicago for the preparation.

13         THE COURT:  February 24th, is it, Yvette?

14         THE CLERK:  Yes.

15         THE COURT:  February 24th at 9:00.  And counsel can

16    relay to the Court if there's an agreement about her

17    appearance for that date, and then we can go ahead and set a

18    final pretrial report to be done.

19         MR. RODRIGUEZ:  Thank you, Your Honor.

20         THE COURT:  And, ma'am, a final pretrial order is

21    probation takes it out to start it.  Probation will contact

22    you and wants to get as much information they can about you,

23    not only about the offense that's in the works since that has

24    been pled guilty to, but as to you as a person all around, not

25    just the fact that you pled guilty today.  Do you understand

1  that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And you need to be able to cooperate with

4  them so I get a full picture of who you are.  Do you

5  understand?

6          THE DEFENDANT:  Yes.

7          THE COURT:  My charge is at that time to give you a

8  sentence that is sufficient but not greater than necessary.

9  Do you understand that?

10         THE DEFENDANT:  Yes.

11         THE COURT:  And, again, there is no promises the

12 Court can make about your immigration status or what may or

13 may not happen to you before that.  Do you understand?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Anything else from the government?

16         MR. FRANZBLAU:  No, Your Honor.

17         THE COURT:  Anything else from the defense?

18         MR. RODRIGUEZ:  No, Your Honor.  We thank you.

19         THE COURT:  All right.  Thank you.  And we have the

20 date of February 24th for status at 9:00.  If for some reason

21 you all come to some agreement before that and I just need to

22 enter an order, I will be on trial -- no, that week we won't,

23 right?

24         THE CLERK:  That week no trial.

25         MR. FRANZBLAU:  Take care, Your Honor.

1     MR. RODRIGUEZ:  Thank you, Your Honor.

2     THE COURT:  All right.  9:00.  See you then.  Thank

3  you.

4     MR. RODRIGUEZ:  Thank you.

5     THE COURT:  Safe travels.

6     MR. FRANZBLAU:  Have a good holiday.

7     THE COURT:  Have a good holiday.  Yes.

8     MR. RODRIGUEZ:  Thank you, Your Honor.

9    (Which were all the proceedings heard.)

10

11                    CERTIFICATE

12    I certify that the foregoing is a correct transcript from

13  the record of proceedings in the above-entitled matter.

14  */s/Kelly M. Fitzgerald*              *October 4, 2021*

15  _____      _____
    Kelly M. Fitzgerald                    Date
16  Official Court Reporter

17

18

19

20

21

22

23

24

25